# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 10

**OCTOBER TERM, A.D. 2020**

**January 21, 2021**

DAVID JAMES BURNS and ROBIN
BURNS, as Wrongful Death Personal
Representatives of Tyler Burns, deceased;
and THE ESTATE OF TYLER BURNS,
deceased,

Appellants
(Plaintiffs),

v.                                                                              S-20-0095

DORA SAM, ROGER DAVIS and
PHILLIP SAM,

Appellees
(Defendants).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellants:*
    Bernard Q. Phelan and Scott Mitchel Guthrie, Phelan and Guthrie Law Firm,
    Cheyenne, Wyoming. Argument by Mr. Phelan.

*Representing Appellee Dora Sam:*
    L. Kathleen Chaney and Edward Duane Dillon, Lambdin & Chaney, LLP, Denver,
    Colorado. Argument by Mr. Dillon.

*Representing Appellee Roger Davis:*
    Robert T. Moxley, Robert T. Moxley, PC, Cheyenne, Wyoming. Argument by
    Mr. Moxley.

*Representing Appellee Phillip Sam:*
    Phillip Sam, pro se. No appearance.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    David James Burns and Robin Burns, as personal representatives of Tyler Burns, and the Estate of Tyler Burns (collectively, the Burnses) brought this wrongful death action.  Tyler Burns was shot by Phillip Sam and died.  The Burnses alleged Mr. Sam's mother, Dora Sam, and her boyfriend, Roger Davis, negligently stored the semi-automatic handgun, stolen by Phillip Sam and then used to kill Tyler Burns.  Finding no common law duty, the district court granted summary judgment to Ms. Sam and Mr. Davis.  The Burnses appeal.  We affirm.

### ISSUE

[¶2]    The dispositive issue is whether Ms. Sam or Mr. Davis owe a common law duty to Tyler Burns, who was killed by a gun stolen from their home.[1]

### FACTS

[¶3]    The underlying facts are set forth in detail in *Sam v. State*, 2017 WY 98, ¶ 8, 401 P.3d 834, 842 (Wyo. 2017) (*Sam I*), and *Sam v. State*, 2019 WY 104, ¶ 3, 450 P.3d 217, 218–19 (Wyo. 2019) (*Sam II*).  We briefly summarize them here.  In October 2014, sixteen-year-old Phillip Sam took an unsecured .40 caliber semi-automatic handgun and ammunition from his mother's home, where she resided with Mr. Davis.  Mr. Davis owned the handgun.  The gun was located in the master bedroom closet in an unlocked gun case next to boxes of ammunition.  Mr. Davis and Ms. Sam were away when Mr. Sam, who was, at that time, living with his father, entered the home to retrieve his work uniform.  While there, he removed the gun from the bedroom closet, placed it in his backpack, and left.

[¶4]    Mr. Sam used the gun to shoot into a crowd, wounding Tyler Burns, and then shot and killed him from point blank range.  *Sam II*, ¶ 3, 450 P.3d at 218–19.  Mr. Sam was convicted of twelve counts of aggravated assault and one count of first-degree murder.  Those convictions were affirmed in *Sam I*.

[¶5]    In 2016, the Burnses filed a complaint against Ms. Sam, Mr. Davis, and Mr. Sam.  Their claims of wrongful death, personal injury not causing death, and negligent infliction of emotional distress against Ms. Sam and Mr. Davis arise from the alleged negligent storage of the handgun Mr. Sam used to kill Mr. Burns.  Their claims against

---

[1] The parties argue two additional issues: (1) whether wrongful death and survivor actions can be simultaneously maintained when the tortfeasor causing injuries and death is the same; and (2) whether punitive damages are recoverable.  We do not reach these issues.

Mr. Sam—wrongful death, personal injury not causing death, and intentional infliction of emotional distress—stem from his actions.

[¶6]     Ms. Sam filed a motion for summary judgment asserting she owed no duty of care to Mr. Burns for the secure storage of the firearm; her alleged negligence was not the proximate cause of Mr. Burns's injuries; the Burnses could not maintain both survivor and wrongful death claims; and that the Burnses were not entitled to punitive damages. The district court expressed doubt concerning the Burnses' ability to maintain both survivor and wrongful death claims but did not rule on the question.  The district court concluded that Ms. Sam and Mr. Davis owed no duty of care to Mr. Burns under the circumstances and granted Ms. Sam's motion for summary judgment.  Thereafter, the district court issued an order pursuant to W.R.C.P. 54 certifying there was no just cause for delay in the entry of an appealable order and entered a final judgment.  The Burnses appeal.[2]

## STANDARD OF REVIEW

[¶7]     Our standard of review for summary judgment is well known:

> This Court reviews the district court's order granting summary judgment *de novo* and may affirm a summary judgment on any legal grounds appearing in the record. *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017); *Int'l Assoc. of Fire Fighters Local Union No. 5058 v. Gillette/Wright/Campbell Cnty. Fire Prot. Joint Powers Bd.*, 2018 WY 75, ¶ 19, 421 P.3d 1059, 1064 (Wyo. 2018).
>
> > [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards.  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

---

[2] Ms. Sam filed her brief in this matter on August 3, 2020.  Mr. Davis filed a "Motion for Leave to Adopt Brief of Appellee Dora Sam" on the same date.  That motion was granted on August 25, 2020.

*Sullivan v. Pike and Susan Sullivan Found.*, 2018 WY 19, ¶ 15, 412 P.3d 306, 310 (Wyo. 2018) (quoting *Rogers v. Wright*, 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016)) (other citations omitted).

"The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for summary judgment." *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶ 9, 148 P.3d 8, 13 (Wyo. 2006). When the moving party does not have the ultimate burden of persuasion, it establishes a *prima facie* case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim. *See, e.g.*, *Rammell v. Mountainaire Animal Clinic, P.C.*, 2019 WY 53, ¶¶ 27–28, 442 P.3d 41, 49 (Wyo. 2019) (defendant presented evidence showing plaintiff could not establish the elements of tortious interference with contract); *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 116, 437 P.3d 758, 796 (Wyo. 2019) (defendant presented evidence showing plaintiff could not establish transfers were fraudulent).

Once the summary judgment movant establishes a *prima facie* case for summary judgment, the burden shifts to the opposing party to present materials demonstrating a genuine dispute as to a material fact for trial. *Hatton*, ¶ 9, 148 P.3d at 12–13. "'The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment[.]'" *Jones v. Schabron*, 2005 WY 65, ¶ 10, 113 P.3d 34, 37 (Wyo. 2005) (quoting *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo. 1994)). The evidence presented in a summary judgment proceeding must be admissible and competent. *Id.*; Rule 56(c)(2).

*Warwick v. Accessible Space, Inc.*, 2019 WY 89, ¶¶ 9–11, 448 P.3d 206, 210–11 (Wyo. 2019).

## DISCUSSION

I. ***Did Ms. Sam or Mr. Davis owe a common law duty to Tyler Burns, who was killed by a gun stolen from their home?***

[¶8] To establish negligence, a plaintiff must prove "(1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the

duty of care; (3) the breach proximately caused injury to the plaintiff; and (4) the injury is compensable by money damages." *Dimick v. Hopkinson*, 2018 WY 82, ¶ 27, 422 P.3d 512, 521 (Wyo. 2018) (quoting *RB, Jr. by & through Brown v. Big Horn Cnty. Sch. Dist. No. 3*, 2017 WY 13, ¶ 13, 388 P.3d 542, 546–47 (Wyo. 2017)).

[¶9]   The district court granted summary judgment to Ms. Sam.  It concluded, "No material questions of fact exist that justify a finding that Defendant Dora Sam and Defendant Roger Davis owed a duty to Tyler Burns as either a homeowner or a parent simply because one of them owned a gun and that gun was stored in the home Defendants occupied."  The Burnses contend that Wyoming imposes a common law duty to securely store a handgun and a common law duty for a parent to control her child when she knows the child has a propensity toward violence.

## A.   Wyoming Law

[¶10]   Generally, "[t]he existence of duty is a question of law." *Warwick*, ¶ 12, 448 P.3d at 211 (quoting *Erpelding v. Lisek*, 2003 WY 80, ¶ 13, 71 P.3d 754, 757 (Wyo. 2003)). "However, in certain cases, the existence of a duty depends upon the determination of basic facts and the determination of those facts may be properly placed before the trier of fact." *Johnson v. Dale C. and Helen W. Johnson Fam. Revocable Tr.*, 2015 WY 42, ¶ 17, 345 P.3d 883, 887 n.1 (citing *Valance v. VI-Doug, Inc.*, 2002 WY 113, ¶ 8, 50 P.3d 697, 701 (Wyo. 2002)).

[¶11]   We have said:

> A duty exists where, 'upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.'

*Daniels v. Carpenter*, 2003 WY 11, ¶ 21, 62 P.3d 555, 563 (Wyo. 2003) (quoting *Duncan v. Afton, Inc.*, 991 P.2d 739, 742 (Wyo. 1999) (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 37, at 236 (5th ed. 1984))).  A "duty of reasonable care exists to avoid injury to another person where it 'could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.'" *Daniels*, ¶ 21, 62 P.3d at 563 (citations omitted).

[¶12]   Determining whether a duty exists involves a balancing of certain factors:

> (1)  the foreseeability of harm to the plaintiff,

(2) the closeness of the connection between the defendant's conduct and the injury suffered,
(3) the degree of certainty that the plaintiff suffered injury,
(4) the moral blame attached to the defendant's conduct,
(5) the policy of preventing future harm,
(6) the extent of the burden upon the defendant,
(7) the consequences to the community and the court system, and
(8) the availability, cost and prevalence of insurance for the risk involved.

*Lucero v. Holbrook*, 2012 WY 152, ¶ 10, 288 P.3d 1228, 1233 (Wyo. 2012) (quoting *Gates v. Richardson*, 719 P.2d 193, 196 (Wyo. 1986)); *Daniels*, ¶ 21, 62 P.3d at 563; *Duncan*, 991 P.2d at 744 (quoting *Ortega v. Flaim*, 902 P.2d 199, 203 n.3 (Wyo. 1995)). Of these,

> [t]he most important consideration is foreseeability. Generally[,] a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous. Foreseeability establishes a 'zone of risk,' which is to say that it forms a basis for assessing whether the conduct creates a generalized and foreseeable risk of harming others.

*Wood v. CRST Expedited, Inc.*, 2018 WY 62, ¶ 11, 419 P.3d 503, 508 (Wyo. 2018) (quoting *Glenn v. Union Pac. R. Co.*, 2011 WY 126, ¶ 34, 262 P.3d 177, 193–94 (Wyo. 2011)); *see also* 57A Am. Jur. 2d *Negligence* § 121, at 196 (2004) ("The most important consideration in the determination of whether the defendant owed the plaintiff a duty is whether the defendant was foreseeably endangered by the defendant's conduct."). Foreseeability is the fulcrum on which duty—its existence or absence—rests.

[¶13] In *Warwick*, we considered whether a landlord owed a duty to protect its tenants from the criminal acts of another tenant. There, one tenant, Mr. Rosenburg, shot three other tenants who resided in a senior living complex. One of the victims died, and two survived. The surviving victims sued the landlord, asserting it had a duty to protect them from their assailant. *Warwick*, ¶ 7, 448 P.3d at 210.

[¶14] We explained:

> the common law imposed a duty upon [the landlord] to take reasonable steps to protect the plaintiffs if Mr. Rosenberg's criminal action was reasonably foreseeable. To establish the requisite foreseeability, the plaintiffs were required to show

5

[the landlord] knew or had reason to know, "either from what ha[d] been or should have been observed or from past experience," Mr. Rosenberg posed a danger to them. *Krier* [*v. Safeway Stores 46, Inc.*], 943 P.2d [405,] 414–15 [(Wyo. 1997)] (citation omitted). This generally requires a showing of prior similar instances of criminal or violent conduct, threats of such conduct or other indications of imminent danger. *Id.*; *Mayflower* [*Rest. Co. v. Griego*], 741 P.2d [1106,] 1113–14 [(Wyo. 1987)]. *See also*, 4 *Modern Tort Law: Liability and Litigation* § 38:15 (2d ed. 2019). A mere battle of words, unaccompanied by action, threat of action or some demonstration which gives warning violence is impending, is insufficient to make criminal action foreseeable to the property owner. *Mayflower*, 741 P.2d at 1113–14.

*Warwick*, ¶ 27, 448 P.3d at 215.

[¶15] We reviewed the circumstances surrounding the event to determine whether the shootings were foreseeable. We examined Mr. Rosenberg's history of complaints regarding the plaintiffs and other residents; we recognized that "[a]lthough he apparently disliked them, there was no evidence Mr. Rosenberg made any threats or was physically violent toward the plaintiffs or any other tenants"; and we concluded that one of the victims' "nonspecific statement to [the property manager] some months before the shootings that Mr. Rosenberg was dangerous, without any corresponding report of violent or criminal behavior, did not establish Mr. Rosenberg's criminal action against the plaintiffs was foreseeable" by the landlord. *Id.* ¶ 36, 448 P.3d at 218.

[¶16] We also examined an "incident where Mr. Rosenberg grabbed [an employee of the landlord's] shirt and was 'going to hit him'" and the employee's "corresponding report to [the landlord] he was 'being threatened' by Mr. Rosenberg [which] was the only known instance of any type of physical violence or threat of physical violence by Mr. Rosenberg during his long tenure at HCA." *Id.* ¶ 37, 448 P.3d at 218. In evaluating whether the incident was sufficient to place the landlord "on notice that it needed to protect the plaintiffs from Mr. Rosenberg, we consider[ed] 'the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action.'" *Id.* (quoting *Krier v. Safeway Stores 46, Inc.*, 943 P.2d 405, 415 (Wyo. 1997)). We held that "[t]his relatively minor altercation was so different in nature and extent from the shooting it did not portend Mr. Rosenberg's premeditated attempt to murder the plaintiffs." *Id.* ¶ 38, 448 P.3d at 218. Viewing the facts in the light most favorable to the plaintiffs, it was not foreseeable that Mr. Rosenberg would attempt to kill the plaintiffs.

6

[¶17]  While *Warwick* provides relevant guidance in determining the existence of a duty and the foreseeability of a criminal act, it does not directly address the duty to safely store a weapon.  Other jurisdictions have dealt with this precise issue and we turn to them for guidance.

## B.     Other Jurisdictions

[¶18]  Many courts have considered whether a gun owner has a duty to a shooting victim to secure a firearm where the gun used was stolen by the gun owner's child or someone closely associated with the gun owner.  Some have imposed a duty.  *See, e.g.*, *Jupin v. Kask*, 849 N.E.2d 829 (Mass. 2006) (imposing a duty to secure firearms where the parents knew their son had a history of criminal violence, had been institutionalized for psychiatric reasons, and had served time in prison for assault); *Estate of Heck ex. rel. Heck v. Stoffer*, 786 N.E.2d 265 (Ind. 2003) (finding a duty to secure firearms when the homeowners' son had a violent criminal history, had stolen from his family on prior occasions, and was a fugitive when he stole a handgun from their home, and later shot and killed a police officer), *disapproved of by Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 391 (Ind. 2016) (disapproving of the analytical framework used to determine foreseeability).  Others have not imposed a duty.  *See, e.g.*, *Estate of Ciotto v. Hinkle*, 2019-Ohio-3809, ¶¶ 6–7, 145 N.E.3d 1013, 1017 (Ct. App.) (finding no duty to secure firearm where son had taken his mother's handgun on two occasions a year before the murder), *appeal not allowed*, 2020-Ohio-122, 137 N.E.3d 1211 (Ohio); *Bridges v. Parrish*, 731 S.E.2d 262, 264 (N.C. Ct. App. 2012) (finding no duty to secure firearms where parents knew of their son's prior criminal record, which included drug and weapon charges, and his pattern of violent behavior toward women), *aff'd*, 742 S.E.2d 794 (N.C. 2013); *Lelito v. Monroe*, 729 N.W.2d 564, 565 (Mich. Ct. App. 2006) (no duty to secure firearms where defendant knew the perpetrator who was living in defendant's home, and the perpetrator had a criminal history and had been in prison); *Mazzilli v. Selger*, 99 A.2d 417 (N.J. 1953) (no duty where mother stored shotgun on a shelf in her sons' bedroom closet); *Lopez v. Chewiwie*, 186 P.2d 512 (N.M. 1947) (no duty to secure firearms where defendants left their son at home alone with loaded firearm).  Still others have concluded that questions of foreseeability (in the context of whether there was a duty and whether the failure to properly store the gun was a proximate cause of the resulting harm) and negligence are for the jury.  *See, e.g.*, *Stanley v. Joslin*, 757 S.W.2d 328, 333 (Tenn. Ct. App. 1987) (negligence and proximate cause were questions for the jury where, despite her admonishments, the defendant's fourteen-year-old grandson accessed her unlocked gun rack, retrieved a gun from the rack, and accidentally shot and killed his friend); *Davis v. Cox*, 206 S.E.2d 655, 657 (Ga. Ct. App. 1974) (holding that evidence presented a jury question regarding foreseeability when defendant left a loaded pistol in a senile person's bedroom drawer and he used it to kill himself); *Kuhns v. Brugger*, 135 A.2d 395, 405 n.15 (Pa. 1957) ("liability [was] for the jury to determine" where a twelve-year-old plaintiff sought damages for personal injuries sustained when he was accidentally

shot with a .22-caliber pistol that his twelve-year-old cousin had taken from an unlocked dresser drawer in the bedroom of their grandfather's summer cottage).

[¶19]  Generally, courts have imposed a duty where the gun owner had knowledge of prior instances of violent criminal conduct by the shooter; courts have not imposed a duty where the shooter's history could not be directly connected to gun violence, the gun owner was unaware of the shooter's propensity for gun violence, or the shooting was an accidental one.  A closer comparison of the distinguishing factors in several of these cases is instructive.

[¶20]  In *Ciotto*, the defendant's fifty-year-old son took her loaded, unsecured gun from her bedroom, went next door, shot the neighbor as she mowed her lawn, and mutilated her body with her lawnmower.  At the time of the murder, the son lived with the defendant, was unemployed, and rarely ventured out of her house.  The son had accessed the defendant's handgun on two occasions a year before the murder, shooting it in the air from the back deck after he had been drinking.  Afterward, the defendant ordered him to leave her firearm alone, and he complied, until the night of the murder.  *Ciotto*, ¶¶ 2, 6–7, 145 N.E.3d at 1016–17.  The victim's estate sued for wrongful death and negligence in failing to store and secure the firearm.  *Id.* ¶¶ 3, 14, 145 N.E.3d at 1016–19.

[¶21]  The appellate court affirmed the lower court's grant of summary judgment, finding the defendant had no duty to secure her firearm.  It held that the defendant could not have foreseen that her son—an entrenched recluse who had no prior violent history—would disobey his mother's instructions after a year of compliance, take his mother's gun, and commit murder.  His conduct represented an extreme departure from his prior conduct, and a subsequent diagnosis indicating a potential for homicidal violence was not part of the defendant's prior knowledge.  *Ciotto*, ¶ 34, 145 N.E.3d at 1023.  The court held appellants failed to overcome the "'somewhat overwhelming' circumstances" and demonstrate facts "sufficient to indicate the murder was likely, and therefore foreseeable . . . ." *Id.*

[¶22]  In *Lelito*, the victim and her boyfriend, a convicted felon, moved in with the defendant and his wife.  The defendant owned several firearms, "which he kept in a cabinet in his bedroom. . . . [O]n a day when defendant and his wife were absent from the home, [the boyfriend] retrieved the revolver, and shot and killed" the victim.  *Lelito*, 729 N.W.2d at 565–66.  The victim's estate sued, alleging strict liability and negligence in leaving a loaded firearm in a location known to the boyfriend, whom the defendant knew was a convicted felon.  *Id.* at 566.  The court held "an individual gun owner who leaves a weapon in a location accessible to a convicted felon but has no reason to foresee the felon's misuse of the weapon is not civilly liable for the felon's misuse of the weapon." *Id.* at 565.

[¶23] The *Lelito* court reasoned the defendant only had a "general understanding" that the boyfriend had been in prison, and

> knowledge of a history of imprisonment does not necessarily mean knowledge of a history of violence. An individual's general knowledge that a person has served a prison sentence is not sufficient to make it reasonably foreseeable that the person will appropriate and then misuse a firearm if its location is known.

*Lelito*, 729 N.W.2d at 567–68. The court concluded that the boyfriend's actions were not foreseeable.

[¶24] In contrast, in *Heck*, the defendants' adult son had a violent criminal history and was a fugitive at the time he entered their home with his own key, took a handgun, and later shot and killed a police officer to avoid arrest. The father indicated an awareness of his son's state of mind; the son had stolen from his family several times; he had been previously charged with resisting law enforcement; his parents knew of his criminal history; and he retained free and unfettered access to their home. When their son was released from prison, they took "extra precautions" to secure their cash, checks, and other valuables based on his track record of stealing. The court determined the harm was foreseeable. *Heck*, 786 N.E.2d at 268–69.

## C.     Application to the Facts Here

[¶25] The common law imposes a duty on Ms. Sam and Mr. Davis to take reasonable steps to protect Tyler Burns if Mr. Sam's criminal action was reasonably foreseeable. To establish foreseeability, the Burnses were required to show that Ms. Sam or Mr. Davis knew or had reason to know, "either from what ha[d] been or should have been observed or from past experience," Mr. Sam posed a danger to Tyler Burns or someone similarly situated. *Warwick*, ¶ 27, 448 P.3d at 215 (quoting *Krier*, 943 P.2d at 414–15). "This generally requires a showing of prior similar instances of criminal or violent conduct, threats of such conduct or other indications of imminent danger." *Id.* (citing *Krier*, 943 P.2d at 414–15; *Mayflower Rest. Co. v. Griego*, 741 P.2d 1106, 1113–14 (Wyo. 1987)). *See also* 4 Barry A. Lindahl, *Modern Tort Law: Liability and Litigation* § 38:15 (2d ed. 2020). It does not require evidence of a relationship between Mr. Sam and Mr. Burns or that the specific harm to Mr. Burns, particularly, be foreseeable. We have explained that the "concept of foreseeability refers to generalized risks of the type of incidents and injuries that occurred rather than predictability of the actual sequence of events[.]" *Warwick*, ¶ 45, 448 P.3d at 219 (quoting *Miller ex rel. Miller v. Tabor W. Inv. Co., LLC*, 196 P.3d 1049, 1058 (Or. Ct. App. 2008). "It is sufficient to show 'the act in question may in human probability produce harm to persons similarly situated.'" *Warwick*, ¶ 41, 448 P.3d at 219 (quoting *Endresen v. Allen*, 574 P.2d 1219, 1222 (Wyo. 1978)).

9

[¶26]   Ms. Sam presented undisputed evidence that Mr. Sam had never before taken or tried to take a gun from her home.  Prior to shooting and killing Tyler Burns, Mr. Sam had never stolen a gun, never used a gun in an altercation, and never brandished a gun.  There is no evidence that Mr. Sam had ever threatened to use a gun to hurt someone or talked about using a gun to hurt someone.  In his interview with the Cheyenne Police Department, Mr. Davis explained, "something had to happen to make him snap.  It's not [Mr. Sam].  It doesn't make sense.  I mean, yes, he gets angry, but when he gets angry he wants to be left alone.  That's normal."

[¶27]   The burden to bring forth specific admissible evidence on the foreseeability of Mr. Sam's actions by Ms. Sam and Mr. Davis shifted to the Burnses.  *See Warwick*, ¶ 29, 448 P.3d at 215.  Foreseeability "generally requires a showing of prior similar instances of criminal or violent conduct, threats of such conduct or other indications of imminent danger."  *Id.* ¶ 27, 448 P.3d at 215 (citing *Krier*, 943 P.2d at 414–15).  The Burnses offered the following evidence:

-   Ms. Sam's testimony that Mr. Sam was willing to fist fight if someone wanted to fight him.

-   Ms. Sam's knowledge that Mr. Sam had been cited for three fist fights in the past year and that he had recently been cited for spitting on someone at school.

-   Ms. Sam's testimony that Mr. Sam had been attacked by a group of students off school grounds and was afraid they would beat him up.

-   Ms. Sam's knowledge that Mr. Sam got in trouble at school, had been suspended from school for fighting, and had been placed at the alternative high school.

-   Mr. Davis's awareness that Mr. Sam was being bullied at school; Mr. Sam was upset over not getting help from the school; and Mr. Sam was frustrated by the situation.

-   Ms. Sam's and Mr. Davis's knowledge that Mr. Sam was not happy with his parents' divorce.

-   Ms. Sam's knowledge that Mr. Sam had used marijuana in the recent past and had tested positive for the drug when he was on probation in April 2014.

-   Ms. Sam's and Mr. Davis's knowledge that since Mr. Sam had started using marijuana, he had behavioral issues.

- Ms. Sam's actions in inquiring about filing a CHINS petition[3] because of Mr. Sam's behavioral issues.

- Ms. Sam's actions in reporting Mr. Sam as a runaway several times, most recently before the shooting.

- Ms. Sam's and Mr. Davis's knowledge that Mr. Sam had experience with firearms and had been instructed on gun safety.

- Ms. Sam's and Mr. Davis's knowledge that Mr. Sam was aware of the gun's location in a box in their bedroom closet. Despite these known tendencies of Mr. Sam, Mr. Davis had placed the gun in the closet, and unsecured ammunition was located beside the gun.

[¶28] Viewing the facts in the light most favorable to the Burnses,[4] we agree with the district court—Ms. Sam and Mr. Davis could not have foreseen that Mr. Sam would steal the gun and use it to kill someone. Mr. Sam was undeniably a troubled teen. He had citations for engaging in fist fights and, most recently, for spitting on another student. However, he had never before taken or tried to take a firearm from his mother's home or anywhere else. There was no evidence that Mr. Sam had ever threatened to use a gun to hurt someone, or even talked about using a gun to hurt someone.

[¶29] The Burnses have not established Ms. Sam or Mr. Davis knew or had reason to know that Mr. Sam posed a danger to Tyler Burns. *Warwick*, ¶ 27, 448 P.3d at 215 (citing *Krier*, 943 P.2d at 414–15). Ms. Sam and Mr. Davis could not have foreseen the criminal acts committed by Mr. Sam—Mr. Sam's theft of the firearm, his use of the weapon to fire on a group of people, and, finally, his shooting at Mr. Burns. There is no genuine issue of material fact as to foreseeability; we find there is no duty upon which a negligence claim may be based. Affirmed.

---

[3] A CHINS petition is a petition brought pursuant to the Children In Need of Supervision Act, Wyo. Stat. Ann. §§ 14-6-401 through -440, which grants the juvenile court jurisdiction to order protective supervision and other services for children who are "habitually truant or ha[ve] run away from home or habitually disobey[] reasonable and lawful demands of his parents, guardian, custodian or other proper authority or [are] ungovernable and beyond control." Wyo. Stat. Ann. §§ 14-6-402(a)(iv), 14-6-403 (LexisNexis 2019).

[4] Ms. Sam and Mr. Davis also contend that the pistol was secured by a trigger lock at the time Mr. Sam stole it. For the purposes of our analysis here, we view the facts in the light most favorable to the Burnses and assume there was no trigger lock on the pistol.