# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 155

OCTOBER TERM, A.D. 2022

December 12, 2022

UPPER WAGON BOX, LLC,

Appellant
(Defendant),

v.

S-21-0209

BOX HANGING THREE RANCH
LIMITED PARTNERSHIP,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
James R. Salisbury, The Salisbury Firm, P.C., Cheyenne, Wyoming; Katherine A. Strike, Stanbury & Strike, P.C., Lander, Wyoming. Argument by Mr. Salisbury.

*Representing Appellee:*
Erika M. Nash and Aaron J. Lyttle, Long Reimer Winegar LLP, Jackson, Wyoming. Argument by Ms. Nash.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]     Upper Wagon Box, LLC's (Upper Wagon Box) predecessor granted a right-of-way and access easement (Easement) over a 20-foot-wide strip of property connecting a public road to land now owned by Box Hanging Three Ranch Limited Partnership (Box Hanging Three).   Upper Wagon Box denied Box Hanging Three access across the Easement, claiming the Easement was in gross, and it provided access only to Box Hanging Three's predecessor in interest.   Box Hanging Three filed an action for declaratory judgment and quiet title.    The district court granted summary judgment to Box Hanging Three, concluding that the Easement is appurtenant and continues to benefit Box Hanging Three. We affirm.

## *ISSUE*

[¶2]     Is the Easement appurtenant for the benefit of land owned by Box Hanging Three, or is it in gross and personal to Box Hanging Three's predecessor in interest?

## *FACTS*

[¶3]     The facts are undisputed.  Between 1971 and 1998, the predecessors in interest to Box Hanging Three, Sylvia Crouter and Jay Hodgson (Crouter), wife and husband, acquired approximately 1000 acres of land from Upper Wagon Box's predecessor, Wagon Box Ranch Co.  These acres can be broken into distinct parcels designated in this appeal as Parcels A, B, C, D, E, F, and G.  Crouter separately acquired other land, not germane to this appeal, designated as Parcel H.  The location of the parcels and the Easement are shown on the following map.[1]

---

[1] This map was Exhibit A to the Affidavit of Katherine A. Strike attached to Upper Wagon Box's WRCP 56.1(a) Statement of Undisputed Material Facts.



Parcels A and H lie north of the Wind River (depicted in blue). Parcels B through G lie south of the Wind River and south of Warm Springs Creek (depicted in green). The disputed Easement (depicted in red) is located on property now owned by Upper Wagon Box and adjoins Parcel G.

[¶4] Wagon Box Ranch Co. conveyed Parcel A to Crouter in 1971. Crouter acquired Parcel H in 1975. In October 1989, Wagon Box Ranch Co. and Crouter entered into a contract concerning the remaining parcels entitled "Memorandum of Agreement for

2

Warranty Deed and Memorandum of Options to Purchase" (the 1989 Contract). The 1989 Contract contained Wagon Box Ranch Co.'s commitment to convey Parcel C to Crouter and gave Crouter a series of successive options to purchase Parcels B, D, E, F, and G. The option structure was designed so that Crouter would first purchase property most distant from land not subject to option and retained by Wagon Box Ranch Co. Crouter would only acquire the land adjoining Wagon Box Ranch Co.'s retained land, Parcel G, after all other optioned parcels had been purchased. The 1989 Contract also provided for an easement across Wagon Box Ranch Co.'s retained land and a license providing access to Parcel C across the remaining parcels subject to the options. In 1989, Crouter's only access to Parcel C and the optioned parcels was through Wagon Box Ranch Co.'s retained property via the Easement and the license. The Easement included a wooden bridge across Warm Springs Creek (the Bridge).[2]

[¶5]    On March 7, 1990, approximately five months after executing the 1989 Contract, Wagon Box Ranch Co. conveyed Parcel C and the Easement to Crouter. On the same day, Crouter exercised their first option and acquired Parcel B. The Easement provided:

> Wagon Box Ranch Co. . . . does hereby grant . . . unto [Crouter], Grantees, . . . a nonexclusive right-of-way and access easement over and across the [20-foot-wide strip of land from the east side of the bridge across Warm Springs Creek, across Wagon Box property, to the north side of the bridge across the Wind River] providing access to the premises abutting said right-of-way, including the right of ingress, egress, and regress.

---

[2] The 1989 Contract described the Easement as follows:

> a road right-of-way through the NE/4NW/4 of said Section 32, 20 feet in width, being 10 feet on either side of the following-described centerline:
>
> > Beginning at point No. 1, which point is on the easterly end of an existing bridge crossing the Warm Spring Creek, bearing N. 29° 47'27" W. a distance of 469.79 feet from the north 1/16 C-C corner of said Section 32, thence proceed along said centerline: N. 69° 43'03" W. a distance of 36.22 feet to point No. 2; S. 75° 35'53" W. a distance of 39.06 feet to point No. 3; S. 53° 29'41" W. a distance of 74.82 feet to point No. 4; thence along a curve to the right whose radius is 28.00 feet and whose length is 69.82 feet to point No. 5; thence: N. 16° 22'8" E. a distance of 43.21 feet to point No. 6; N. 59° 54'21" E. a distance of 54.04 feet to point No. 7; N. 43° 26'48" E. a distance of 78.86 feet to point No. 8; N. 31° 41'41" E. a distance of 388.26 feet to point No. 9, which point is on the northerly side of a bridge crossing the Wind River, which point is the end of described right-of-way, bearing N. 06° 08'16" W. a distance of 857.49 feet from the North 1/16 C-C corner of said Section 32, said road being 784.29 feet in length and containing 0.360 acres . . . .

3

The legal description of the Easement is identical to the legal description set forth in the 1989 Contract. *Supra* note 1.

[¶6]    On June 15, 1990, in compliance with the terms of the 1989 Contract, Wagon Box Ranch Co. entered into a license agreement[3] with Crouter.  The license agreement states that "in consideration of the sale and purchase of" Parcel C, the parties agree:

> That the within license shall constitute a permit from [Wagon Box Ranch Co.] to [Crouter] for ingress and egress over and across [Wagon Box Ranch Co.'s property], and shall continue until the . . . Options to Purchase shall be fully performed; [and]

> That this continuous license shall be binding on all successors and assigns of the respective parties . . . .

The license provided access to Parcel C (and the first exercised option parcel, Parcel B) through Parcels E, F, and G.  Between September 1990 and August 1998, Crouter exercised the remaining options and purchased Parcels D, E, F, and G.  *Supra* ¶ 4.  In April 1999, Crouter conveyed all the parcels it had purchased from Wagon Box Ranch Co. to Box Hanging Three.  In 2013, Wagon Box Ranch Co. conveyed the property subject to the Easement to Upper Wagon Box.[4]  The transfers are summarized as follows:

| 05/21/1962 | Wagon Box Ranch Co. acquired Parcels A through G |
|---|---|
| 08/18/1971 | Parcel A conveyed to Crouter by Wagon Box Ranch Co. |
| 1975 | Parcel H acquired by Crouter from third party |
| 10/17/1989 | 1989 Option Contract executed by Wagon Box Ranch Co. and Crouter providing: <br> • Agreement to sell Parcel C <br> • Agreement for the Easement <br> • Agreement for a license over Parcels E, F, and G <br> • Options for Crouter to purchase Parcels B, D, E, F, and G |

---

[3] The license is described as:
> [A]n access right-of-way 20 feet in width traversing the NW/4NE/4, SW/4NE/4, NW/4SE/4, SW/4SE/4, SE/4SW/4, Section 32, Township 42 North, North, Range 107 West, 6th P.M. (access through the NW/4NE/4 of Section 5, Township 41 North, Range 107 West, by virtue of a U. S. Forest Service lease)[.]

[4] In both cases, there were intervening transfers.  Those transfers are not relevant to the issue here and are not further discussed.

| 03/07/1990 | Crouter acquired:<br>• Parcel B<br>• Parcel C<br>• The Easement |
|---|---|
| 06/15/1990 | Crouter acquired the license over Parcels E, F, & G |
| 09/28/1990 | Parcel D acquired by Crouter |
| 06/16/1993 | Parcel E acquired by Crouter |
| 05/05/1998 | Parcel F acquired by Crouter |
| 08/28/1998 | Parcel G acquired by Crouter and pursuant to the parties' agreement the license expired |
| 04/01/1999 | Crouter conveyed Parcels A, B, C, D, E, F, and G to Box Hanging Three |
| 06/10/2013 | Wagon Box Ranch Co. conveyed the property subject to the Easement to Upper Wagon Box |

[¶7]   In 2017, Warm Springs Creek flooded, damaging the Bridge.  Upper Wagon Box removed the Bridge and did not reconstruct it.  Without the Bridge, Box Hanging Three can no longer use the Easement as a means of ingress and egress to its property.[5]  Box Hanging Three filed a Complaint requesting a declaratory judgment addressing the parties' rights and obligations regarding the Easement and seeking to quiet title.  Upper Wagon Box answered and asserted counterclaims for declaratory relief, quiet title, and ejectment. At issue was whether the Easement was in gross and personal to Crouter or whether it was an easement appurtenant.  The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor Box Hanging Three, ruling that the Easement was appurtenant and perpetual and that the Bridge is a reasonable improvement necessary for Box Hanging Three's enjoyment of the Easement.  Upper Wagon Box timely appeals.

### STANDARD OF REVIEW

[¶8]   "We review the district court's order granting summary judgment de novo and can affirm on any legal grounds provided in the record." *Page v. Meyers*, 2021 WY 73, ¶ 9, 488 P.3d 923, 926 (Wyo. 2021) (citing *Burns v. Sam*, 2021 WY 10, ¶ 7, 479 P.3d 741, 743 (Wyo. 2021)); *see also Four B Properties, LLC v. Nature Conservancy*, 2020 WY 24, ¶ 26, 458 P.3d 832, 839–40 (Wyo. 2020).

> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards.  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that

---

[5] Hanging Box Three does have access to its property via a second bridge over the Wind River that crosses from Parcel H to Parcel G.  The second bridge was constructed in 1994.

party the benefit of all favorable inferences that may fairly be drawn from the record.

*Page*, ¶ 9, 488 P.3d at 926 (quoting *Burns*, ¶ 7, 479 P.3d at 744).

[¶9]     Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted."

*Wood v. CRST Expedited, Inc.*, 2018 WY 62, ¶ 8, 419 P.3d 503, 506 (Wyo. 2018) (quoting *Fugle v. Sublette Cnty. Sch. Dist. No. 9*, 2015 WY 98, ¶ 5, 353 P.3d 732, 734 (Wyo. 2015) (citing W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002))).

## ***DISCUSSION***

[¶10] Upper Wagon Box claims the Easement was an easement in gross, personal to Crouter. Upper Wagon Box argues that when the Easement was conveyed Crouter did not own Parcel G, which abutted the burdened estate, and therefore, the Easement did not follow the land.

[¶11] An easement is a nonpossessory interest in land that entitles the easement holder to a right of limited use in another's property. *BNSF Ry. Co. v. Box Creek Min. Ltd. P'ship*, 2018 WY 67, ¶ 18, 420 P.3d 161, 166 (Wyo. 2018); *Hasvold v. Park Cnty. Sch. Dist. No. 6*, 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo. 2002); *Baker v. Pike*, 2002 WY 34, ¶ 11, 41 P.3d 537, 541 (Wyo. 2002). Easements differ from licenses "in that a license generally grants permission to do something on another's property. Since permission to do something can be easily rescinded, the landowner usually can terminate the license. . . . [E]asements are generally irrevocable interests in land." *Baker*, ¶ 11, 41 P.3d at 541 (citing Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 1:4 (2001)).

[¶12] Easements may be appurtenant or in gross. An easement is appurtenant "when the easement is created to benefit and does benefit the possessor of the land in his use of the land." *Gayhart Tr. of Tiphany L. Gayhart Living Tr. dated Oct. 1, 2008 v. Corsi*, 2020 WY 58, ¶ 20, 462 P.3d 904, 910 (Wyo. 2020) (quoting *Hasvold*, ¶ 14, 45 P.3d at 638); *Baker*, ¶ 12, 41 P.3d at 541; *Weber v. Johnston Fuel Liners, Inc.*, 519 P.2d 972, 975 (Wyo. 1974); *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d 581, 586 (Wyo. 1999). "Land burdened by an easement is appropriately termed a servient tenement or a servient estate. If the easement benefits a particular parcel of land, that parcel is known as the dominant tenement

or dominant estate, and the easement is said to be appurtenant to it." *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 13, 327 P.3d 732, 737–38 (Wyo. 2014) (quoting Bruce & Ely, *supra*, § 1:1, at 1–6 (2014)).

[¶13] "An appurtenant easement is tied to the dominant estate, is conveyed with a conveyance of that estate, and cannot be conveyed independently thereof." *Gayhart*, ¶ 20, 462 P.3d at 910 (quoting *Box L Corp. v. Teton Cnty. ex rel. Bd. of Cnty. Comm'rs of Teton Cnty.*, 2004 WY 75, ¶ 12, 92 P.3d 811, 815 (Wyo. 2004)); *see also Baker*, ¶ 14, 41 P.3d at 542 (An appurtenant easement "is transferred with possession of the dominant property even if it is not mentioned in the document of transfer." (quoting *R.C.R.*, 978 P.2d at 586)).

[¶14] An easement is in gross when the easement is created to benefit someone personally, and not as a possessor of any particular land. *Hasvold*, ¶ 14, 45 P.3d at 638. "Traditionally, easements in gross, having no dominant estate to which to be attached, were considered personal to their holder and, as such, non-assignable." *Gayhart*, ¶ 20, 462 P.3d at 910 (quoting *Box L Corp.*, ¶ 12, 92 P.3d at 816); *Baker*, ¶ 12, 41 P.3d at 541.

## A.    The Dominant Estate

[¶15] Upper Wagon Box argues that to create a valid appurtenant easement, the grantee must own the dominant estate at the time the easement is conveyed. Upper Wagon Box points out that the Easement states it is providing "access to the premises abutting said right-of-way." It maintains that Parcel G is the dominant estate described in the Easement and that the "premises abutting" language in the Easement refers to Parcel G. It argues the Easement cannot be appurtenant as Crouter did not own Parcel G at the time the Easement was conveyed.

[¶16] The appellants in *Hasvold* made a similar argument. There, an easement was conveyed to Tall Oak, who did not own the dominant estate. Tall Oak intended to purchase the dominant estate but needed an easement to secure financing from its lender to complete the purchase. The dominant estate was deeded to Tall Oak "shortly after" the easement was recorded. *Hasvold*, ¶ 18, 45 P.3d at 639. We recognized that "in the typical situation, the grantee of an appurtenant easement will already have acquired title to the dominant estate when the easement is granted." *Id.* ¶ 17, 45 P.3d at 639. However, we concluded that under the circumstances, "the fact that Tall Oak did not own the dominant estate when the easement was conveyed does not, by itself, dictate that the easement cannot be interpreted as being appurtenant to the land." *Id.* ¶ 19, 45 P.3d at 639. An appurtenant easement "may be created to benefit a person as the possessor of certain land contingent upon his obtaining possession thereof, or upon his future selection of land to which the easement will then become appurtenant." *Id.* ¶ 17, 45 P.3d at 639 (quoting Restatement of Prop. § 453 cmt. a (Am. Law. Inst. 1944)).

[¶17]   Here, when the Easement was conveyed, Wagon Box Ranch Co. was the fee owner of Parcel G and Crouter had title to Parcels B and C.  Crouter had an option to purchase Parcel G.  As anticipated by the 1989 Contract, Crouter exercised their options over time and acquired Parcels D, E, F, and G.  If we were to accept Upper Wagon Box's argument that Parcel G is the dominant estate, the fact that Crouter did not own Parcel G when the Easement was conveyed does not necessarily dictate that the Easement is not appurtenant, but we do not decide on that basis here.  *See Hasvold*, ¶ 19, 45 P.3d at 639; Bruce & Ely, *supra,* § 2:4 (updated 2022).

[¶18]   In this case, Parcels B and C were purchased by Crouter at the same time the Easement was conveyed.  While Parcels B and C were not physically adjacent to the Easement, they benefitted from it.  This raises the question of whether the dominant estate must physically abut the servient estate for an appurtenant easement to be created.  "With respect to the creation of easements appurtenant, courts have adopted two different views concerning the geographic relationship of the dominant and servient tenements." *Davis v. Hall*, 2012 MT 125, ¶ 28, 280 P.3d 261, 270.  "According to the prevailing view, the dominant and servient estates *need not physically abut* in order to create an easement appurtenant."  Bruce & Ely, *supra*, § 2:6 (updated 2022) (emphasis added) (citing cases). "A few jurisdictions, however, adhere to the view that an easement cannot be appurtenant unless the dominant and servient estates are contiguous at some point." *Id.*

[¶19]   We have not previously addressed this question.  Most jurisdictions favor a rule which does not require the servient tenement to be adjacent to the dominant tenement. *See Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996) ("We do not insist there be strict, physical, contact between the parcels."); *Murphy v. Olsen*, 826 N.E.2d 249, 253 (Mass. App. Ct. 2005) ("The servient estate need not be adjacent to the dominant."); *Davis*, 280 P.3d at 270–71 (holding that express easement may be appurtenant to noncontiguous land if that was intention of parties); *Gojmerac v. Mahn*, 2002 WI App 22, ¶ 20, 640 N.W.2d 178, 184 (adopting majority rule that easement may be appurtenant to noncontiguous estates if parties so intended); *see generally* Bruce & Ely, *supra*, § 2:6.

[¶20]   We conclude that the majority rule is the better approach, and clarify here that we do not require strict, physical contact between the dominant and servient estate for an easement to be appurtenant, if the parties so intended.  *Pevear*, 924 S.W.2d at 116. However, like the court in *Pevear*, we "are persuaded that 'the use of the easement must be so related to the use of the dominant tenement that its particular connection with the beneficial enjoyment of that tenement is not merely conjectural, but direct and apparent.'" *Id.* (quoting *Thomas v. Brooks*, 221 S.W. 542, 543 (Ky. Ct. App. 1920)).  Crouter acquired Parcels B and C from Wagon Box Ranch Co. on the same day that Wagon Box Ranch Co. conveyed the Easement to them.  Crouter could not access either parcel without the Easement.  Accordingly, while Parcels B and C were not physically adjacent to the Easement, Crouter could not enjoy the benefit of its ownership of those parcels without use of the Easement.  Parcels B and C were the dominant estate referred to in the Easement.

## B.      Whether the Easement Is Appurtenant or in Gross

[¶21]   "An easement will not be presumed to be in gross when it can fairly be construed to be appurtenant."  *Gayhart*, ¶ 20, 462 P.3d at 910 (quoting *R.C.R.*, 978 P.2d at 586); *Smithson v. Lindzey*, 2021 WY 15, ¶ 18, 479 P.3d 759, 765 (Wyo. 2021); *Leeks Canyon Ranch*, ¶ 34, 327 P.3d at 742 (quoting *Hasvold*, ¶ 14, 45 P.3d at 638).  "Easements are presumed to be appurtenant, rather than in gross, and we have recognized a strong preference to construe easements as being the former, rather than the latter."  *Lozier v. Blattland Invs., LLC*, 2004 WY 132, ¶ 15, 100 P.3d 380, 385 (Wyo. 2004); *Pokorny v. Salas*, 2003 WY 159, ¶ 23, 81 P.3d 171, 177 (Wyo. 2003).  We conduct our analysis of the Easement with this presumption in mind.

[¶22]   When we construe an easement, "we seek to determine the intent of the parties to the easement."  *Hasvold*, ¶ 13, 45 P.3d at 638 (citing *R.C.R.*, 978 P.2d at 586); Restatement (Third) Prop.: Servitudes § 4.1 (Am. Law Inst. 2000).  "Our deed interpretation rules focus on deriving the intentions of the parties."  *Leeks Canyon Ranch*, ¶ 14, 327 P.3d at 738 (quoting *Ecosystem Res., L.C. v. Broadbent Land & Res., L.L.C.*, 2007 WY 87, ¶ 9, 158 P.3d 685, 688 (Wyo. 2007)).

[¶23]   When interpreting easements, we have explained:

> The language of a contract is to be construed within the context in which it was written.  In so doing, the court may look to the surrounding circumstances, the subject matter and the purpose of the contract.  The purpose of examining the context within which the contract was drawn, however, is limited to ascertaining the intent of the parties at the time the agreement was made.  The context cannot be invoked to contradict the clear meaning of the language used, and those extraneous circumstances do not justify a court in proceeding to insert therein a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties.

*Lozier*, ¶ 9, 100 P.3d at 383–84 (citations omitted); *see also Leeks Canyon Ranch*, ¶ 14, 327 P.3d at 738 ("[E]ven if a contract is unambiguous, we can examine evidence of the circumstances surrounding the execution of the deed to arrive at the parties' intent." (quoting *Ecosystem Res.*, ¶ 10, 158 P.3d at 688)).

[¶24]   The Easement's stated purpose is to provide "access to the premises abutting said right-of-way, including the right of ingress, egress, and regress."  This language suggests that the Easement was intended to be appurtenant.  *Hasvold*, ¶ 22, 45 P.3d at 640; *Yaali,*

*Ltd. v. Barnes & Noble, Inc.*, 506 S.E.2d 116, 119 (Ga. 1998) ("Generally, where a right to pass over land is given for ingress and egress, . . . the easement as appurtenant rather than in gross.").

[¶25]  We have identified six "badges" of an appurtenant easement.  The badges of an appurtenant easement are:

> (1) that the easement was created to benefit a specific tract of land; (2) that the grant was for a perpetual right-of-way for ingress and egress; (3) that the grantee has the right to inspect and maintain the easement; (4) that the right is not limited to the possessor personally; (5) that the grant expressly extends the right to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives; and (6) that the easement document does not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates.

*Smithson*, ¶ 21, 479 P.3d at 766 (quoting *Gayhart*, ¶ 21, 462 P.3d at 910); *see also Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 68, 393 P.3d 1279, 1297–98 (Wyo. 2017) (quoting *Hasvold*, ¶ 21, 45 P.3d at 640 (citing *R.C.R.*, 978 P.2d at 586)).  The badges of appurtenance assist in deriving the intentions of the parties and must be viewed within the context of each case.  Their presence is an indication of appurtenance, but their absence is not dispositive.  *See Lozier*, ¶ 15, 100 P.3d at 385 (stating "the dominant tenement need not be described within the instrument, so long as it exists and can be identified" (citing *Pokorny*, ¶¶ 27–28, 81 P.3d at 179)); *Smithson*, ¶ 23, 479 P.3d at 766 (The lack of appurtenance, "successors and assigns," and similar language is a "non-dispositive factor," which the Court must "weigh in conjunction with the other relevant factors.").

[¶26]  Upper Wagon Box argues that the Easement lacks all the badges of appurtenance.  It asserts that it "does not reference and/or detail any specific tract of land as the benefitted/dominant parcel," and because the Easement provides "access to the premises abutting said right-of-way," there "is no benefitted" land.  Addressing the first badge, Upper Wagon Box argues, as we stated earlier, that Parcel G "abutted" the Easement, and was owned by Wagon Box Ranch Co. when the Easement was conveyed; and without ownership of Parcel G, Crouter had no benefitted parcel.  *See supra* ¶ 15.  As to the remaining badges, Upper Wagon Box points out that the Easement does not expressly state that the right-of-way is perpetual in duration, or that the dominant estate owner has the right to inspect and maintain it.  It was not limited to the possessor personally, and there was no mention of its heirs, "successors and assigns."  Finally, it is silent on transferability.

[¶27]  We agree in part with Upper Wagon Box.  Three of the six badges are not explicitly set forth in the Easement.  The Easement contains the first, fourth, and sixth badges.  The

first badge looks at whether the easement was created to benefit a specific tract of land. Here, Wagon Box Ranch Co. sold Crouter Parcels B and C on the same day it granted the Easement. The Easement provided Crouter with their only access to Parcels B and C. Parcels B and C were the dominant estate benefitted by the Easement at the time the Easement was conveyed. *See Lozier*, ¶ 15, 100 P.3d at 385 ("[T]he dominant tenement need not be described within the instrument, so long as it exists and can be identified." (citing *Pokorny*, ¶¶ 27–28, 81 P.3d at 179)). The fourth badge looks at whether the easement is limited to the grantee personally. The sixth badge addresses whether the easement contains limitations on transferability. The Easement contains no restriction on transferability, and it is not expressly limited to Crouter personally. Silence is not a restriction or a limitation. The first, fourth, and sixth badges indicate appurtenance.

[¶28] The Easement does not expressly incorporate the remaining badges, but it does not contravene them. The term of the Easement is not limited. The right to inspect and maintain an easement is implied in Wyoming law. *See Koch v. J & J Ranch, LLC*, 2013 WY 51, ¶ 34, 299 P.3d 689, 696 (Wyo. 2013). The lack of "successors and assigns" and similar language is a "non-dispositive factor." *See Smithson*, ¶ 23, 479 P.3d at 766. While not dispositive, the presence of some, but not all of the badges do not conclusively establish that the parties intended the Easement to be appurtenant.

[¶29] Because we find the badges inconclusive, we turn to the "circumstances surrounding execution of [the] agreement" such as "the parties' relationship, the subject matter of the contract, and the parties' apparent purpose in making the contract, to determine the parties' intent[.]" *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 43, 226 P.3d 889, 909 (Wyo. 2010) (citing *Mullinnix LLC v. HKB Royalty Tr.*, 2006 WY 14, ¶ 6, 126 P.3d 909, 915 (Wyo. 2006)); *Voss v. Albany Cnty. Comm'rs*, 2003 WY 94, ¶ 29, 74 P.3d 714, 723 (Wyo. 2003) (the easement did not contain all of the badges of an appurtenant easement requiring examination of extrinsic evidence to discern the intent of the parties), *superseded by statute on issues concerning private road construction*, *see Whaley v. Flitner Ltd. P'ship*, 2017 WY 59, ¶¶ 19–20, 395 P.3d 653, 660 (Wyo. 2017). Our "examination of the context within which the contract was drawn is limited to ascertaining the intent of the parties in making the agreement." *Davison v. Wyoming Game & Fish Comm'n*, 2010 WY 121, ¶ 9, 238 P.3d 556, 560 (Wyo. 2010).

[¶30] In 1990, Wagon Box Ranch Co. conveyed Parcels B and C and the Easement to Crouter on the same day. Three months later, in compliance with the 1989 Contract, Wagon Box Ranch Co. provided Crouter with a license across Parcels E, F, and G (some of the remaining optioned parcels under the 1989 Contract) to access Parcels B and C. The license was perpetual unless all of the options were exercised, and it expired by its own terms once all the parcels were purchased. Together, the Easement and the license provided Crouter access to Parcels B and C and the remaining optioned parcels as they were acquired. *Supra* ¶¶ 4–6, 18–20. As anticipated, Crouter exercised their options to purchase all the parcels identified in the 1989 Contract between 1990 and 1998. The license then

11

expired, leaving Crouter with the Easement as their means of access to all the purchased parcels. The parties clearly postulated that Crouter would acquire all the parcels over time, and understood that even if they did not acquire all the parcels, access would be necessary for them to enjoy their purchase of Parcels B and C. The 1989 Contract, the Easement, and the license worked together to supply access to Parcels B and C standing alone, and to each subsequent parcel, if and when purchased. Under these circumstances, it is hard to fathom that the parties intended the Easement to be anything other than appurtenant. Nevertheless, we will examine who benefits from the Easement, another factor in determining the nature of an easement.

[¶31]  An easement is:

> (a) appurtenant to an interest in property if it serves a purpose that would be more useful to a successor to a property interest held by the original beneficiary of the servitude at the time the servitude was created than it would be to the original beneficiary after transfer of that interest to a successor;

> (b) in gross if created in a person who held no property that benefited from the servitude, or if it serves a purpose that would be more useful to the original beneficiary than it would be to a successor to an interest in property held by the original beneficiary at the time the servitude was created[.]

*Smithson*, ¶ 19, 479 P.3d at 765 (citations omitted).

[¶32]  Here, the Easement was useful to Crouter as the owners of Parcels B through G. When Crouter conveyed the parcels to Box Hanging Three, the Easement was of no use to them, but clearly benefitted their successor. *See Smithson*, ¶ 20, 479 P.3d at 766. As the district court aptly explained, "When an easement adds to the enjoyment of another parcel of land or if an easement is made 'useless except as a means of access to a parcel, it will likely be viewed as an easement appurtenant.'" (quoting Bruce & Ely, *supra*, § 2:2). The Easement was created to benefit and does benefit the possessor of the land, and this weighs in favor of appurtenance.

## CONCLUSION

[¶33]  When the Easement was conveyed, Parcels B and C were the dominant estate. While the language of the Easement lacks explicit reference to some of the badges of an appurtenant easement, that omission does not outweigh the circumstances demonstrating the parties' intent that the Easement was to be appurtenant and is insufficient to overcome the presumption of appurtenance. We affirm.