# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 100

### OCTOBER TERM, A.D. 2023

### October 24, 2023

|  |  |
|---|---|
| BARBARA CAMPBELL and WILLIAM LOVELAND, on behalf of themselves and as representatives of a class of similarly situated persons, <br><br> Appellants <br> (Plaintiffs), <br><br> v. <br><br> CHRIS DAVIDSON; TRI COUNTY TELEPHONE ASSOCIATION, INC., a Wyoming corporation; DALIN WINTERS; CLIFFORD ALEXANDER; J.O. SUTHERLAND; DANIEL GREET; JOHN K. JOHNSON; NEIL SCHLENKER; BHT INVESTMENTS, LLC, a Wyoming Limited Liability Company; BHT HOLDINGS, INC., a Wyoming corporation; BHT MERGER CORPORATION, a Wyoming corporation; and STEVE HARPER, <br><br> Appellees <br> (Defendants). | S-22-0303 |

*Appeal from the District Court of Park County*
The Honorable Jason M. Conder, Judge

*Representing Appellants:*
> Drake D. Hill, Hill Law Firm, LLC, Cheyenne, Wyoming; Jonathan O. Hafen, Robert S. Clark, Gregory M. Hess, Matthew J. Ball, Parr Brown Gee & Loveless, P.C., Salt Lake City, Utah. Argument by Mr. Hill and Mr. Clark.

*Representing Appellees Tri County Telephone Association, Inc., Neil Schlenker, BHT Investments, LLC, BHT Holdings, Inc., and BHT Merger Corporation:*
> David M. Clark, Ragain & Clark, P.C., Worland, Wyoming. Argument by Mr. Clark.

*Representing Appellees Dalin Winters, Clifford Alexander, J.O. Sutherland, Daniel Greet, and John K. Johnson:*
> Robert C. Jarosh, Hirst Applegate, Cheyenne, Wyoming. Argument by Mr. Jarosh.

*Representing Appellees Chris Davidson and Steve Harper:*
> Russell D. Yerger, Yerger Law Firm, P.C. Billings, Montana; Jon M. Moyers, Moyers Law P.C., Billings, Montana.

*Before FOX, C.J., and KAUTZ, GRAY, FENN, JJ, and ROBINSON, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Tri County Telephone Association, Inc. (Cooperative) was a Wyoming cooperative utility organized to provide telecommunication services to its members on a non-profit basis. It also invested in for-profit ventures through four subsidiaries. In December 2014, over 2/3 of the Cooperative's members voted to sell the Cooperative, including its for-profit subsidiaries, to entities owned and controlled by Neil Schlenker. Mr. Schlenker, in turn, converted the Cooperative into a for-profit corporation under the same name, which we will refer to as TCT to distinguish it from the Cooperative. After the sale, R. Joseph Campbell, Barbara Campbell, and William Loveland (Class Representatives) filed a class action lawsuit, ostensibly on behalf of themselves and all members of the Cooperative at the time of its sale, against TCT, Mr. Schlenker and his entities (the BHT entities), two of the Cooperative's officers, and five former directors of the Cooperative's Board of Directors (collectively Defendants). The lawsuit alleged, *inter alia*, claims for fraud, constructive fraud, breach of fiduciary duty, conversion, and civil conspiracy. In essence, the Class Representatives claimed Defendants duped the Cooperative's members into selling what they allege was a $105 million Cooperative for a mere $29 million. The district court granted summary judgment in favor of Defendants and denied the Class Representatives' motions for partial summary judgment. The Class Representatives appealed. We affirm.

## ISSUES

[¶2]    The parties present numerous issues on appeal, but the following issues are dispositive:

1.      Did the district court err by granting summary judgment in favor of Defendants on the Class Representatives' fraud, constructive fraud, and aiding and abetting fraud claims because they could not demonstrate the existence of a genuine issue of material fact with respect to the element of reliance?

2.      Did the district court err by granting summary judgment to Defendants on the Class Representatives' claim that TCT, with the help of Mr. Schlenker and the BHT entities, converted the Cooperative members' capital credits and on their claim that the Cooperative's officers and directors breached their fiduciary duties by failing to ensure the members were paid the full amount of their capital credits?

3.      Did the district court err by dismissing the Class Representatives' claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty because they were not brought as derivative claims?

4.      Did the Class Representatives properly make and preserve a claim for monetary damages based on Defendants' alleged violation of Wyo. Stat. Ann. § 17-19-

1

1807(a)(iv)?

5. Did the district court err by granting summary judgment in favor of Defendants on the Class Representatives' civil conspiracy claim?

## FACTS

[¶3] The record in this matter is voluminous. We recite only those facts necessary to our resolution of this appeal.

### *The Cooperative*

[¶4] In the early 1950s, the Cooperative was organized under Wyoming law as a cooperative utility to provide telecommunication services on a non-profit basis to its members in the Big Horn Basin. As the Cooperative grew, it was divided into four geographical service areas/exchanges: (1) Burlington, (2) Ten Sleep, (3) Hyattville, and (4) Hamilton Dome. The Cooperative was managed by a five-person Board of Directors (who were also members of the Cooperative), with one director elected from each service area and one elected by the Cooperative's membership at large. The Board appointed a Chief Executive Officer (CEO) and Chief Financial Officer (CFO) to oversee the day-to-day business activities of the Cooperative. At all relevant times, Chris Davidson and Steve Harper served as CEO and CFO, respectively.

[¶5] As a condition of membership in the Cooperative, each member was required to purchase telecommunication services from the Cooperative. Members paid the Cooperative monthly for their selected telecommunication services, and the Cooperative applied the funds to the operating costs and expenses it incurred to furnish services to the members. If the amount received from the members exceeded the Cooperative's operating costs and expenses, the Board credited the excess to the members' "capital credit accounts" in proportion to each member's patronage. The amount credited to a member's capital credit account remained there until the Board allowed a "retirement" of capital. Before the sale of the Cooperative in December 2014, the Board had not retired any capital credits for over fourteen (14) years. However, members received a monthly discount (approximately $15 per month) on their bills; this amount was deducted from their capital credit accounts.

### *The Cooperative's For-Profit Subsidiaries*

[¶6] Over the years, the Cooperative created four subsidiaries for the purpose of carrying on for-profit activities unrelated to providing telecommunication services to its members: (1) TCT West, Inc., (2) TCT Investments Cellular, LLC, (3) TCT Investments ESL, LLC, and (4) TCT Investments, LLC. Through TCT West, the Cooperative purchased five rural telecommunication exchanges from U.S. West Communications and acquired thousands of customers who were not members of the Cooperative. TCT West provided

2

telecommunication services to these customers on a for-profit basis. The Cooperative formed TCT Investments Cellular to hold a 34% limited partnership interest in Wyoming 1-Park Limited Partnership. The general partner was Verizon Wireless and the purpose of the partnership (hereinafter Verizon Partnership) was to provide cellular telephone services in various areas in northern Wyoming. TCT Investments ESL owned 568,590 shares of Class D common stock issued by Eleutian Technologies, Inc., a company involved in long-distance language education, and TCT Investments held a 51% interest in Best of the West, LLC, a manufacturer of sporting firearms and related media.

[¶7]    The Cooperative received considerable profits from these investments, primarily from TCT West's for-profit activities and the Verizon Partnership.[1]   As a non-profit cooperative, there was no ready method for the Cooperative to distribute those profits to its members. It tracked the profits by "assigning" them to its members' capital credit accounts in proportion to their patronage, but this action did not increase the capital accounts.

### *The Sale of the Cooperative and Its Subsidiaries*

[¶8]    In the Spring of 2009, Mr. Schlenker offered to purchase the Cooperative for $11 million and 50% of the Cooperative's net profits for the three years immediately following the sale. In June 2009, the Board unanimously rejected the offer because it found the offer to be "totally unacceptable and far below value."

[¶9]    Four years later, in July 2013, Mr. Schlenker returned with a new offer to purchase the Cooperative for $40 million less net liabilities, which were defined as total liabilities minus cash and marketable securities. Over the next fourteen months, the Board negotiated with Mr. Schlenker on the price and other terms of the sale. The negotiations ultimately led the Board, with the exception of Mr. Campbell, to agree, subject to approval of 2/3 of the Cooperative's members, to sell the Cooperative's LLC subsidiaries for $19,302,000 and the Cooperative (including TCT West) for $26.7 million. To accomplish the Cooperative portion of the sale, BHT Merger Corporation, a subsidiary of BHT Holdings, Inc. (a company associated with Mr. Schlenker), would merge with and into the Cooperative and the Cooperative would be the surviving corporation.

[¶10] On September 19, 2014, the Board sent a letter to the Cooperative's members notifying them of the proposed sale and inviting them to vote on the sale with an enclosed ballot. The letter informed the members that the sale proceeds would be divided among the membership and advised each member of his approximate amount. It provided a summary of the sale documents and told the members the instruments were available at the Cooperative's offices in Basin and Cody. Enclosed with the letter were three pages of

---

[1] The issue of whether or how a nonprofit cooperative could separately operate a for-profit business is not an issue in this case.

anticipated "Questions and Answers" concerning the sale. The letter informed the members that a meeting of members would be held on December 20, 2014, at the Cooperative's office in Basin "to count the ballots and announce the results of the vote." The enclosed ballot advised the members they could mail their ballots or bring them to the December 20, 2014, meeting or one of the three informational meetings held by the Cooperative in September and October 2014. On October 15, 2014, and December 2, 2014, the Board sent the members two more letters with additional anticipated "Questions & Answers."

[¶11] On December 20, 2014, the Board held a special membership meeting at which the Cooperative's Credentials and Elections Committee counted the votes. The Committee certified that out of 825 members eligible to vote, 652 members or 79% voted in favor of the sale, more than the 2/3 required by the Wyoming Cooperative Utility Act (*see* Wyo. Stat. Ann. §§ 17-20-1106(a)(iii), 17-20-1201(c) (LexisNexis 2023)) and the Cooperative's bylaws. Forty-two members, including Mr. Loveland, a Class Representative, voted "no," and the remaining members, including the Campbells, also Class Representatives, did not return a ballot and therefore their votes were tallied as a "no."

[¶12] On December 31, 2014, BHT Investments, LLC, another company associated with Mr. Schlenker, purchased the Cooperative's three LLC subsidiaries. The sale proceeds were allocated (added) to the members' capital credit accounts in proportion to their patronage. That same day the Cooperative issued checks to its members, paying them the amounts in their capital credit accounts, which included their proportion of the proceeds from the sale of the LLC subsidiaries and the profits the Cooperative had accumulated over the years from providing telecommunication services to its members. All members, including the Campbells and Mr. Loveland, cashed their checks.

[¶13] On January 2, 2015, BHT Merger Co. was merged with and into the Cooperative, with the Cooperative as the surviving entity.[2] The Articles of Merger filed with the Wyoming Secretary of State stated "pursuant to and upon completion of the [merger], [the Cooperative] will no longer be a cooperative utility as defined by W.S. § 17-20-140(a)(i)." On that same day, Mr. Schlenker filed Amended Articles of Incorporation with the Wyoming Secretary of State, which transformed the Cooperative from a nonprofit corporation into a Wyoming for-profit corporation (TCT).

### This Lawsuit

[¶14] On December 28, 2015, almost a year after the sale, the Campbells filed a class action complaint against TCT; Mr. Davidson and Mr. Harper (collectively "Officers");

---

[2]Although the merger agreement referred to the Cooperative as the surviving entity, the Cooperative effectively ceased to exist as it no longer had members. *See* Wyo. Stat. Ann. § 17-20-603 (LexisNexis 2023) ("A cooperative utility is required to have members.").

Dalin Winters, Clifford Alexander, J.O. Sutherland, Daniel Greet, and John Johnson (the Board's directors at the time of the sale, collectively "Directors"); and Mr. Schlenker and the BHT entities (BHT Investments, LLC, BHT Holdings, Inc., and BHT Merger Corporation). The Campbells amended their complaint twice. The operative complaint, the Second Amended Complaint, alleged twelve causes of action including fraud, constructive fraud, aiding and abetting fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, and civil conspiracy. It requested the sale "be set aside" and sought monetary damages, including punitive damages.

[¶15] The Campbells filed a motion for class certification under Wyoming Rule of Civil Procedure (W.R.C.P.) 23 which purported to define the class as the 825 members of the Cooperative at the time of its sale. The district court granted the motion and appointed the Campbells as class representatives.[3] During the pendency of the district court proceedings, Mr. Campbell died and the district court granted Ms. Campbell's motion to appoint Mr. Loveland as a class representative. We will continue to refer to the Campbells and Mr. Loveland collectively as the "Class Representatives."

[¶16] In October 2017, the Class Representatives filed a motion for partial summary judgment arguing the sale was void because, among other things, it violated Wyo. Stat. Ann. § 17-19-1807(a)(iv) (LexisNexis 2023) of the Wyoming Nonprofit Corporation Act. *See* Wyo. Stat. Ann. § 17-20-103 (LexisNexis 2023) (stating the Wyoming Nonprofit Corporation Act applies to cooperative utilities unless inconsistent with the Wyoming Cooperative Utilities Act). According to the Class Representatives, § 17-19-1807(a)(iv) prohibited the Cooperative from becoming a for-profit corporation. The district court denied the motion, concluding § 17-20-1106 provided "the statutory authority for the merger of a cooperative utility with an entity other than a cooperative utility, provided certain conditions have been met and/or complied with."

[¶17] After concluding discovery in the case, the Class Representatives filed a second motion for partial summary judgment on their (1) conversion claim, (2) breach of fiduciary duty claims based on the Officers' and Directors' failure to, *inter alia*, obtain two independent analyses of the effect of the sale on the members' equity position as required by § 17-20-1106(a)(iv) and § 17-20-1201(b)(i), and (3) breach of fiduciary duty and constructive fraud claims based on Defendants' violations of the voting requirements outlined in § 17-20-1201(b)(ii) and the Cooperative's bylaws. The Defendants, in turn, filed a joint motion for summary judgment on all of the Class Representatives' claims. The district court granted Defendants' motion and denied the Class Representatives' motion. The Class Representatives appealed.

---

[3] The Second Amended Complaint did not allege that each member of the class met the jurisdictional requirement for actions in district court. *See Mutual of Omaha Ins. Co. v. Blury-Losolla*, 952 P.2d 1117, 1121 (Wyo. 1998). However, whether the district court properly certified a class is not an issue before us.

5

## STANDARD OF REVIEW

[¶18] Each of the Class Representatives' arguments on appeal were resolved by the district court on summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a).

> We review the district court's order granting summary judgment de novo and can affirm on any legal grounds provided in the record. *Burns v. Sam*, 2021 WY 10, ¶ 7, 479 P.3d 741, 743 (Wyo. 2021) (citing *Warwick v. Accessible Space, Inc.*, 2019 WY 89, ¶ 9, 448 P.3d 206, 210 (Wyo. 2019)).
>
>> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.
>
> [*Burns,*] ¶ 7, 479 P.3d at 744 (quoting *Warwick*, ¶ 9, 448 P.3d at 210–11).

*Page v. Meyers*, 2021 WY 73, ¶ 9, 488 P.3d 923, 926 (Wyo. 2021).

## DISCUSSION

### 1. *Fraud/Constructive Fraud/Aiding and Abetting Fraud*

[¶19] In the first cause of action in the Second Amended Complaint, the Class Representatives asserted claims for fraud and constructive fraud against the Officers and Directors. In support of these claims, they alleged that between 2009 and 2014, the Officers and Directors made material misrepresentations and omissions to the members which allowed Mr. Schlenker, with the help of his friend, Mr. Davidson, to "take over" the Cooperative for far less than it was worth. Among other things, the Class Representatives maintained the Board violated § 17-20-1201(b)(i) by failing to have the sale independently analyzed for its effect on the members' equity position, thereby depriving the members of information necessary to properly evaluate the sale. In the second cause of action, the

6

Class Representatives asserted the Officers and Directors committed fraud by misrepresenting and lying to members about the true value of the sale in the September 19, 2014, letter. The Class Representatives further alleged Mr. Schlenker and the BHT entities aided and abetted the Officers' and Directors' fraud.

[¶20] The district court awarded summary judgment to Defendants on the Class Representatives' fraud claims for several reasons. We need only focus on one. The court decided the Class Representatives could not demonstrate the existence of a genuine issue of material fact with respect to the element of reliance because it was undisputed that they did not rely upon Defendants' alleged misrepresentations. We agree with the district court.

[¶21] "Fraud is established when a plaintiff demonstrates, by clear and convincing evidence that, (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) *the plaintiff relied on the false representation* and suffered damages." *Bitker v. First Nat'l Bank in Evanston*, 2004 WY 114, ¶ 12, 98 P.3d 853, 856 (Wyo. 2004) (emphasis added). "The element of reliance overlaps with (and may be considered a form of) the usual requirement in tort that a defendant's wrong be a factual or 'but for' cause of the harm that the plaintiff suffered." Restatement (Third) of Torts: Liability for Econ. Harm § 11 (2020). "There can be no recovery if the plaintiff did not believe the defendant's misrepresentation[] or was not aware of it until after the transaction was complete . . . . In those cases, the claim fails because the plaintiff did not act in reliance on the defendant's statement." *Id*.

[¶22] Each of the Class Representatives voted "no" on the sale, which precludes any claim that they relied on any misrepresentations by Defendants.[4] Only those who voted "yes" could claim they relied on misrepresentations. Further, the Class Representatives stated they did not believe the alleged misrepresentations, did not rely upon them, and had, in fact, tried to counter them.

[¶23] The Class Representatives do not dispute that they did not rely on the alleged misrepresentations. Rather, they claim reliance should be presumed in spite of their votes because their fraud claim is a claim of fraud by omission. The Class Representatives argue Defendants withheld numerous material facts, so reliance is presumed under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972).

[¶24] *Affiliated Ute* involved a claim for securities fraud under § 10(b) of the Securities Exchange Act, *see* 15 U.S.C. § 78j, and Rule 10-b of the Security and Exchange Commission. *Id.*, 406 U.S. 128 at 144-45, 92 S.Ct. at 1467-68. The United States Supreme Court held: "Under the circumstances of this case, involving primarily a failure to disclose,

---

[4] The Campbells did not vote on the sale, knowing their failure to vote would be considered a "no" vote.

positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Id.*, 406 U.S. 128 at 153-54, 92 S.Ct. at 1472 (citations omitted). We have not yet addressed whether *Affiliated Ute*'s presumption of reliance applies to a common law fraud claim based, in whole or in part, on alleged omissions of material fact and we need not do so here. Assuming, without deciding, the presumption of reliance applies, the presumption is rebuttable upon a showing the plaintiff did not, in fact, rely. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159, 128 S.Ct. 761, 769, 169 L.Ed.2d 627 (2008) (stating *Affiliated Ute*'s presumption of reliance is rebuttable); *Black v. Finantra Cap., Inc.*, 418 F.3d 203, 209 (2d Cir. 2005) (*Affiliated Ute*'s presumption of reliance is rebuttable upon a showing that plaintiff did not, in fact, rely); *Rifkin v. Crow*, 574 F.2d 256, 262 (5th Cir. 1978) (*Affiliated Ute*'s "presumption of reliance in nondisclosure cases is not conclusive. If defendant can prove that plaintiff did not rely, that is, that plaintiff's decision would not have been affected even if defendant had disclosed the omitted facts, then plaintiff's recovery is barred."). In this case, Defendants rebutted any presumption.

[¶25] The Class Representatives maintain the district court erred by using their actions to find no reliance on the alleged misrepresentations and omissions. According to them, the fact they affirmed they would fairly and adequately represent the class and that their claims were typical of the claims of the class is irrelevant to the showing of reliance. They assert that because over 2/3 of the Cooperative's members voted "yes" on the sale, a genuine issue of material fact exists about whether those members relied on the alleged materially misleading disclosures they received.

[¶26] W.R.C.P. 23(a) states "[o]ne or more members of a class may sue . . . on behalf of all members only if . . . the claims . . . of the representative parties are typical of the claims or defenses of the class; and . . . the representative parties will fairly and adequately protect the interests of the class." The Class Representatives told the district court that their claims were representative of the members of the class. Other courts have refused to certify a class under the "typicality" and "representation" requirements where the putative class representatives are subject to unique defenses which may not be applicable to other members of the proposed class. *See, e.g., Sheehan v. Grove Farm Co., Inc.,* 163 P.3d 179, 191 (Haw.Ct.App. 2005) (affirming circuit court's denial of class certification where purported class representative sought to raise a negligent misrepresentative claim yet he, unlike other purported class members, was aware of the alleged omissions prior to voting on the merger); *Kas v. Fin. Gen. Bankshares, Inc.*, 105 F.R.D. 453, 461-62 (D.D.C. 1985) (denying motion for class certification where defendants had an available defense peculiar to the class representatives, namely, the representatives did not rely on the alleged deceptive proxy statement because they voted against the merger for reasons unrelated to that statement, whereas other members of the proposed class were allegedly deceived by the proxy statement and, relying upon it, voted in favor of the merger). Here, the propriety of the district court's class certification order and its appointment of the Campbells and

8

Mr. Loveland as the class representatives is not before us. However, by confirming to the district court that their claims were typical of other class members and that they would fairly and adequately protect the interests of the class, the Class Representatives are now estopped from arguing otherwise.

[¶27] The fact that 2/3 of the Cooperative's members voted "yes" on the sale does not create a genuine issue of material fact on the element of reliance. Notably absent from the record is any evidence of a member who voted "yes" who would have voted "no" had he known Defendants made the alleged material omissions. Indeed, at his February 21, 2018, deposition, Mr. Campbell stated he had talked with some former members of the Cooperative about the lawsuit. When asked if he was aware of members "who voted yes that, if given the opportunity, would now vote no" on the sale, he responded, "Yes, I would be – I'm sure that there would be some, yes" but admitted he "[didn't] know of any for sure, no." Similarly, Barbara Campbell claimed "there were a lot of people who did" rely on the alleged misrepresentations when casting their votes because "they voted 'yes'" on the sale but admitted she did not know if any did, in fact, rely.

[¶28] The Class Representatives argue the district court erred by granting judgment to Defendants on their constructive fraud claim without addressing the facts they allege support the claim. They assert Defendants' withholding and concealing of numerous material facts from the Cooperative's members in connection with the sale, including the true value of the Cooperative's assets, amply supported their constructive fraud claim. "Constructive fraud has been defined as consisting of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects." *Johnson v. Reiger*, 2004 WY 83, ¶ 22, 93 P.3d 992, 998 (Wyo. 2004) (citing *In re Estate of Borton*, 393 P.2d 808, 812 (Wyo. 1964)). Because they did not rely on any alleged material misrepresentations or omissions and there is no evidence that any member relied, the Class Representatives cannot show they were damaged by any alleged misrepresentations or omissions. They simply cannot state a claim for constructive fraud, whatever the substance of the claimed omissions were, because they cannot show reliance. Similarly, because the Class Representatives failed to establish their fraud and constructive fraud claims against the Officers and Directors, they also cannot show Mr. Schlenker and the BHT entities participated in or aided and abetted any fraud. *See Bader v. Mills & Baker Co.*, 28 Wyo. 191, 201 P. 1012, 1014 (1921) ("It is a fundamental rule of the law of tort, including trespass, *that all who participate in the wrong* are equally liable). *See also*, Restatement (Second) of Torts § 876 (1979) (setting forth the Restatement's position regarding the liability of a person acting in concert with another person whose "tortious conduct" results in harm to a third person").

[¶29] The district court properly granted summary judgment in favor of Defendants on the Class Representatives' fraud, constructive fraud, and aiding and abetting fraud claims.

9

## *2. Conversion*

[¶30]  In the eleventh cause of action of the Second Amended Complaint, the Class Representatives alleged:

> In doing the acts as herein above alleged, Defendants Neil Schlenker and associated companies, Chris Davidson, Steve Harper, [and] Dalin Winters[] took the value of the Cooperative that should have been paid out to the owners and converted the same to their own use, and failed and refused, and continued to fail and refuse, to distribute the sale proceeds to the owners.

The district court granted summary judgment to Defendants on the conversion claim, holding "the value of the []Cooperative" and its assets were owned by the Cooperative, not its members, and therefore the Cooperative, not its members, held "title" to them.  As a result, the members had no right to possess, use, or enjoy the alleged converted property, a necessary element of conversion.

[¶31]  The Class Representatives argue their conversion claim was based on the conversion of the members' capital credits and the district court erred in determining the capital credits were owned by the Cooperative, not its members.  According to them, because of a cooperative's non-profit status, all of its profits belong to its members as capital credits and not to the cooperative.  The Class Representatives specifically claim the subsidiary profits "assigned" to the members' capital credit accounts but not accrued or added to the capital accounts were taken by conversion because they were not paid to the members upon the sale of the Cooperative and its subsidiaries.  Although they did not specifically allege their conversion claim against TCT in the Second Amended Complaint, they maintain on appeal that TCT converted these profits with the help of Mr. Schlenker and the BHT entities.

[¶32]  We conclude, albeit on different grounds, that the district court correctly granted summary judgment to Defendants on the Class Representatives' conversion claim.  *See Burns*, ¶ 7, 479 P.3d at 743 ("This Court . . . may affirm a summary judgment on any legal grounds appearing in the record.") (citations omitted).

[¶33]  "Conversion is defined as any distinct act of dominion wrongfully executed over one's property in denial of his right or inconsistent therewith."  *Satterfield v. Sunny Day Res., Inc.*, 581 P.2d 1386, 1388 (Wyo. 1978) (quoting *W. Nat'l Bank of Casper v. Harrison*, 577 P.2d 635, 640 (Wyo. 1978)).  *See also, Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 975 (Wyo. 1994) ("[C]onversion occurs when a person treats another's property as his own, denying to the true owner the benefits and rights of ownership.").  To establish a conversion, a plaintiff must show:

10

(1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.

*Ferguson*, 884 P.2d at 975 (quoting *Frost v. Eggeman*, 638 P.2d 141, 144 (Wyo. 1981)). Moreover, one cannot be liable for conversion of another's property if the person consented to the conversion. Restatement (Second) of Torts § 252 (1965) ("One who would otherwise be liable to another for . . . conversion is not liable to the extent that the other has effectively consented to the interference with his rights.").

[¶34]   The Class Representatives allege TCT converted the Cooperative members' share of the subsidiaries' profits "assigned" but not accrued to their capital credit accounts when, after the merger, Mr. Schlenker and the BHT entities amended the Cooperative's Articles of Incorporation, thereby transforming the Cooperative from a non-profit cooperative utility into a for-profit corporation. At that time, however, the members did not have legal title to, possession of, or the right to possess these profits because they had sold the Cooperative to Mr. Schlenker and the BHT entities. *See Ash v. First Nat'l Bank of East Arkansas,* 573 S.W.3d 584 (2019) (concluding stock power signed by Mr. Ash was a valid indorsement under Arkansas securities law which transferred legal title to the stock shares from Mr. Ash to National Bank of East Arkansas, as trustee of Mr. Ash's mother's irrevocable testamentary trust; because Mr. Ash did not have legal title to or the right to possess the shares after he signed the stock power, he could not state a claim for conversion of those shares against the Bank). *Cf. McCarthy v. James E. Simon Co.*, 923 P.2d 747, 749-50 (Wyo. 1996) (because the James E. Simon Company (Simon) purchased the gravel from Ms. McCarthy, Simon had legal title to the gravel and Ms. McCarthy's refusal to allow Simon to remove the gravel constituted a conversion of the gravel). Moreover, by voting to approve the sale of the Cooperative and its subsidiaries to Mr. Schlenker and the BHT entities, the members consented to TCT's alleged conversion.

[¶35]   The Class Representatives assert the Cooperative could not extinguish the members' ownership rights in the capital credits, including the subsidiary profits "assigned" to their capital credit accounts, other than by repaying their full amount to the members. This argument ignores that it was not the Cooperative who sold the capital credits but rather the members, as the Cooperative could not be merged and/or sold without the approval of 2/3 of the members. Sections 17-20-1106(a)(iii), 17-20-1201(c). Indeed, in their brief, the Class Representatives state: "Only the [m]ember[s] could and did authorize the sale of the Cooperative[.]"

11

[¶36]   The Class Representatives rely on *Lieberman v. Mossbrook*, 2009 WY 65, 208 P.3d 1296 (Wyo. 2009), for the proposition that TCT converted the members' capital credits. Such reliance is misplaced.  Mr. Lieberman withdrew from an LLC and claimed the LLC owed him the value of his interest.  *Lieberman*, ¶ 7, 208 P.3d at 1301-02.  About three years later, the LLC was merged into a corporation and the existing members' interests were converted into shares.  *Id.*, ¶ 10, 208 P.3d at 1302.  Mr. Lieberman sued, alleging conversion of his equity interest in the LLC.  *Id.*, ¶ 16, 208 P.3d at 1303.  We concluded Mr. Lieberman had established the elements of conversion:  "[H]e was legally entitled to payment of his equity interest at the time his membership was cancelled and his capital contribution returned; [the LLC] failed to pay him the value of his equity interest; he demanded payment; [the LLC] rejected his demand; and he sustained damages."  *Id.*, ¶ 44, 208 P.3d at 1309.  We decided the new corporation was liable to Mr. Lieberman for the conversion of his equity interest.  *Id.*, ¶ 60, 208 P.3d at 1313.  *Lieberman* does not help the Class Representatives because, unlike the Cooperative's members, Mr. Lieberman did not sell his equity interest or consent to the conversion of his equity interest.

[¶37]   The Class Representatives argue on appeal that by failing to ensure the members were paid their capital credits, thereby leading to their wrongful conversion by TCT, the Officers and Directors breached their fiduciary duties.  Because TCT did not convert the members' capital credits, the Officers and Directors did not breach any duty with respect to the capital credits and the Class Representatives cannot show they were damaged by any breach.  *Gowdy v. Cook*, 2020 WY 3, ¶ 27, 455 P.3d 1201, 1208 (Wyo. 2020) ("To establish a claim for breach of fiduciary duties, the plaintiff must show a duty based on a fiduciary relationship, breach of the duty, and the breach caused him damage." (citing *Acorn v. Moncecchi*, 2016 WY 124, ¶ 80, 386 P.3d 739, 762 (Wyo. 2016) (other citation omitted)).

[¶38]  The district court correctly granted summary judgment in favor of TCT, Mr. Schlenker, and the BHT entities on the Class Representatives' conversion claim and in favor of the Officers and Directors on the Class Representatives' claim they breached their fiduciary duties by allowing TCT to convert the members' capital credits.

### 3.  *Breach of Fiduciary Duty*

[¶39]  In the first, fourth, fifth, sixth, and ninth causes of action of the Second Amended Complaint, the Class Representatives alleged the Officers and Directors breached their common law and statutory fiduciary duties of due care, loyalty, disclosure, good faith, and to serve the best interests of the Cooperative by violating various statutes and bylaws, including § 17-20-1201(b), and by making the alleged material misrepresentations and omissions about the sale.[5]  They also asserted Mr. Schlenker and the BHT entities aided

---

[5] In the seventh and eighth causes of action of the Second Amended Complaint, the Class Representatives alleged the Officers and Directors violated Wyo. Stat. Ann. § 2-3-301 (LexisNexis 2023) of the Wyoming

and abetted the Officers and Directors in their breach of fiduciary duties. The district court granted Defendants' motion for summary judgment on these claims for several reasons. Again, we need only focus on one. The court decided the breach of fiduciary duty and aiding and abetting claims could only be brought in a derivative action because they were "based solely upon [the Class Representatives'] membership in the []Cooperative" and sought damages that the Officers and Directors "caused to the []Cooperative, and thereby to them as members [of the Cooperative]." The court determined: "This connection between an injury to the Cooperative and thus to the member is the very definition of a derivative action. As such, [these claims are] now barred because the [Class Representatives] have failed to satisfy the requirements of a derivative suit." We agree with the district court.

[¶40] To determine whether an action is direct or derivative in nature, we look to the bearer and nature of the alleged injury. *Fritchel v. White*, 2019 WY 117, ¶¶ 12, 14, 452 P.3d 601, 604-05 (Wyo. 2019) (citing *Sullivan v. Pike & Susan Sullivan Found.*, 2018 WY 19, ¶ 22, 412 P.3d 306, 312 (Wyo. 2018), and *Wallop Canyon Ranch, LLC v. Goodwyn*, 2015 WY 81, ¶ 29, 351 P.3d 943, 951-52 (Wyo. 2015)).

> "[W]hen [a] director (or shareholder or member) seeks to remedy an injury to the corporation rather than himself, the action is derivative in nature." *Sullivan*, 2018 WY 19, ¶ 22, 412 P.3d at 312. "As a general rule, recovery in such actions inures to the corporation rather than to the stockholders as individuals." *Wallop Canyon Ranch, LLC . . .*, ¶ 28, 351 P.3d [at] 951 . . . (quoting *Lynch v. Patterson*, 701 P.2d 1126, 1130 (Wyo. 1985)). Generally, "[a] claim is derivative in nature where the plaintiff was not injured 'directly or independently' of the [entity]." *Wallop [Canyon Ranch, LLC]*, . . . ¶ 29, 351 P.3d at 951.

*Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 152, 437 P.3d 758, 806-07 (Wyo. 2019).

[¶41] The distinction between a derivative action and a direct action is important because "a plaintiff who mischaracterizes a derivative cause of action as direct [risks] dismissal of the claim" for failure to comply with derivative suit procedural requirements. *Mantle*, ¶ 154, 437 P.3d at 807. To satisfy those requirements, the plaintiff must: (1) be a member . . . at the time of bringing the proceeding, and (2) demand the directors act or state with particularity why such demand would be futile. Wyo. Stat. Ann. § 17-19-630 (LexisNexis

---

Probate Code which sets forth the standards for fiduciaries and their authority to acquire and retain property and investments. The district court determined these statutes did not apply. The Class Representatives do not challenge that determination on appeal.

2023). *See also*, W.R.C.P. 23.1 (setting forth the procedures for derivative actions brought by "shareholders or members"). "Although our precedent on direct versus derivative actions is limited, we have never strayed from the rule that derivative injuries must be remedied by derivative actions." *Fritchel*, ¶ 22, 452 P.3d at 606 (citing *Mantle*, ¶ 152, 437 P.3d at 806-07; *Sullivan*, ¶ 22, 412 P.3d at 312; *Wallop Canyon Ranch, LLC*, ¶ 31, 351 P.3d at 952).

[¶42] "A claim for breach of fiduciary duty is generally derivative in nature." 12B Fletcher Cyc. Corp. § 5923.30. This case is no exception. The Class Representatives rely on Wyo. Stat. Ann. §§ 17-19-830, 17-19-831, and 17-19-842(a) (LexisNexis 2023) for their claims of breach of fiduciary duty against the Officers and Directors. Section 17-19-830 simply states a director may be liable for his intentional torts or illegal acts. To the extent this statute imposes a duty on directors not to commit intentional torts or illegal acts, its purpose is to protect the nonprofit corporation from such conduct. As a result, a breach of that duty primarily injures the nonprofit corporation. Any injury to a nonprofit corporation's members stemming from a breach of this duty is derivative of the corporation's injury.

[¶43] Section 17-19-831 sets forth the conflict of interest statute for directors of a non-profit corporation. In *Sullivan*, we concluded that a challenge to a board's action on the basis that it involved an improper conflict of interest belongs to the corporation. We explained:

> In *Mueller v. Zimmer*, 2005 WY 156, ¶ 30, 124 P.3d 340, 357 (Wyo. 2005), we stated that the purpose of the nonprofit corporation conflict of interest statute, § 17-19-831, is to "protect the corporation from potential unfair dealing by providing for review of conflict of interest transactions by disinterested board or committee members."

*Sullivan*, ¶ 24, 412 P.3d at 313. Similarly, the Class Representatives' challenge to the Directors' actions on the basis they involved an improper conflict of interest belongs to the Cooperative, not its members, and any injury is primarily to the Cooperative and only indirectly to its members.

[¶44] Section 17-19-842(a) states officers who are employees of the corporation with discretionary authority, like Mr. Davidson and Mr. Harper, must discharge their duties under that authority in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances, and in a manner the officer reasonably believes to be in the best interest of the corporation and its members, if any. Again, these duties are owed primarily to the corporation and when they are violated, the injury is to the corporation and only derivatively to its members.

[¶45] The Class Representatives maintain the Officers and Directors owed fiduciary duties directly to the members, not merely to the Cooperative itself. For example, they argue their claim for breach of fiduciary duty arising from the failure to observe proper voting procedures can never be a derivative action because it is a personal claim—only members were entitled to vote. We are not persuaded. The purpose of the voting procedures is to protect the integrity of elections relating to the Cooperative, including a vote to sell all or a portion of its assets, thereby ensuring its assets are not misappropriated. *See* § 17-20-1201. In this case, the claimed injury resulting from the Officers' and Directors' alleged failure to observe proper voting procedures was that the Cooperative and its subsidiaries were ultimately sold for far less than their worth. This injury would be primarily to the Cooperative and only indirectly to the Class Representatives as members of the Cooperative.

[¶46] Because the Class Representatives' breach of fiduciary duty claims are derivative so too are their claims that Mr. Schlenker and the BHT entities aided and abetted the Officers' and Directors' alleged breach of fiduciary duties.

[¶47] The district court properly granted summary judgment to Defendants on the Class Representatives' breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims. These claims are derivative and the Class Representatives failed to comply with the derivative suit procedural requirements.

### 4. Section 17-19-1807(a)(iv)

[¶48] The Class Representatives argue the sale of the Cooperative violated § 17-19-1807(a)(iv), which they allege prohibited the Cooperative from becoming a for-profit corporation. They maintain they are entitled to monetary damages resulting from this violation under their constructive fraud and breach of fiduciary duty claims. The problem for the Class Representatives is that they failed to properly raise a violation of this statute as a basis for monetary damages in the district court.

[¶49] The Class Representatives never mentioned § 17-19-1807(a)(iv) in their original complaint or first amended complaint. In September 2016, at a hearing on Defendants' motions to dismiss the first amended complaint, class counsel stated he believed the sale was illegal and should be set aside "because of the violations of statute that have occurred." Counsel stated the legality of the sale was a threshold issue and he hoped to address the issue "early in the case." Despite these comments, the Second Amended Complaint did not mention § 17-19-1807(a)(iv) in any respect, let alone as part of the Class Representatives' constructive fraud and breach of fiduciary duty claims.

[¶50] Although the Class Representatives never pled a violation of § 17-19-1807(a)(iv) in any of their complaints, they argued in their first motion for partial summary judgment filed in October 2017 that the sale was void because § 17-19-1807(a)(iv) prohibited the

15

Cooperative from becoming a Wyoming for-profit corporation. In that motion, they sought to have the sale "voided with the assets returned to the owners of the Cooperative" and requested that "the Cooperative be reconstituted under the bylaws existing at the time of the takeover with a new board of directors to be elected within 30 days of the date of the Court's order." They never mentioned any claim for monetary damages connected with this statute.

[¶51] The district court determined the sale was not void under § 17-19-1807(a)(iv) because the statute did not apply. Nevertheless, it also determined recission of the sale was "infeasible" because TCT had operated as a for-profit corporation for many years, including engaging in contracts, providing services, and otherwise "moving forward." *See Walter v. Moore*, 700 P.2d 1219, 1227 (Wyo. 1985) (stating a party seeking to rescind a contract must substantially return the opposite party to the position in which he was prior to entering into the contract; "[h]ow [substantial restoration of the status quo] is to be accomplished, *or indeed whether it can*, is a matter which is within the discretion of the trial court, under the facts as found to exist by the trier of the fact." (emphasis added) (citation and internal quotation marks omitted)).

[¶52] Bluntly, the Class Representatives never claimed a violation of § 17-19-1807(a)(iv) constituted constructive fraud or a breach of fiduciary duty and entitled the class members to recover monetary damages. They never sought in the district court what they now seek—money damages for breach of fiduciary duty and constructive fraud based on Defendants' alleged violation of § 17-19-1807(a)(iv). Because this issue was not raised below, we will not consider it now. *See Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo. 2000) ("Our general rule is that we will not consider issues not raised in the court below." (citing *WW Enterprises, Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo. 1998)).

### 5. *Civil Conspiracy*

[¶53] In the third cause of action in the Second Amended Complaint, the Class Representatives alleged Defendants conspired to defraud and deceive the Cooperative's members by wrongfully transferring the Cooperative to Mr. Schlenker and the BHT entities for "little or no money" and for the benefit of themselves and to the prejudice of the members. They claimed Defendants accomplished this wrongful transfer by failing to disclose and misrepresenting the true facts of the sale to the Cooperative's members and by violating Wyoming law and the Cooperative's bylaws.

[¶54] The district court granted summary judgment in favor of Defendants on the civil conspiracy claim because the Class Representatives failed to reference an underlying tort and there was no evidence of a meeting of the minds to effectuate a tort, both necessary elements of a civil conspiracy claim. On appeal, the Class Representatives argue the court erred because the underlying torts of fraud, conversion, and breach of fiduciary duty were referenced in the Second Amended Complaint and they presented evidence that Mr.

16

Schlenker and Mr. Davidson effectuated a plan to take over the Cooperative and its subsidiaries for far less than they were worth.

[¶55] We can dispose of the civil conspiracy claim in short order. Because the Class Representatives cannot establish the Defendants committed fraud or conversion, they also cannot establish Defendants conspired to commit such torts. *Action Snowmobile & RV, Inc. v. Most Wanted Performance, LLC*, 2018 WY 89, ¶ 16, 423 P.3d 317, 324 (Wyo. 2018) ("In order to bring a civil conspiracy claim, a plaintiff must state an underlying cause of action in tort.") (citation omitted); *White v. Shane Edeburn Constr., LLC*, 2012 WY 118, ¶ 30, 285 P.3d 949, 958 (Wyo. 2012) ("Ms. White's conspiracy claim fails for the same reasons that are fatal to her claim of fraud. Fundamentally, in order to show that she was entitled to relief, Ms. White was obliged to allege that she suffered damages resulting from Appellees' conduct" and she failed to do so). Moreover, the Class Representatives' claim that the Defendants conspired to breach fiduciary duties is a derivative claim, as any injury from such conspiracy was to the Cooperative and only indirectly to its members. *Mantle*, ¶ 152, 437 P.3d at 806-07.

## CONCLUSION

[¶56] The district court did not err by granting summary judgment in favor of Defendants on the Class Representatives' fraud, constructive fraud, and aiding and abetting fraud claims because the Class Representatives failed to establish reliance. Similarly, we find no error in the court's award of summary judgment to Defendants on the Class Representatives' conversion claim. The Cooperative's members did not have legal title to, possession of, or the right to possess the capital credits at the time of the alleged conversion because they consented to the sale of the Cooperative and its subsidiaries. Summary judgment to Defendants on the breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims was proper because those claims were derivative and the Class Representatives failed to follow the procedures required for derivative actions. Because they did not raise the issue below, we decline to address the Class Representatives' argument that they were entitled to monetary damages based on Defendants' alleged violation of § 17-19-1807(a)(iv). The district court did not err by granting summary judgment to Defendants on the civil conspiracy claim.

[¶57] Affirmed.

17